J-S31016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.H., MINOR CHILD | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.J., FATHER | : : : : : : | |
| | : | No. 3484 EDA 2017 |

Appeal from the Order Entered September 25, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001248-2016,
FID No. 51-FN-001481-2015

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.: **FILED JULY 10, 2018**

C.J. (Father) appeals from the order, entered in the Court of Common Pleas of Philadelphia, terminating his parental rights to his eight-year-old son, J.C.H., (Child) pursuant to 23 Pa.C.S. §§ 2511(a)(1),(2), (5), (8),[1] and

---

[1] Section 2511 provides, in pertinent part:

    (a)   **General rule**.— The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

    (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

    (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without

(b)[2] of the Adoption Act, and changing the goal to adoption.

_____

> essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8).

[2] Section 2511(b) provides:

> (b) **Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. **With respect to any petition**

*See* 23 Pa.C.S. §§ 2511 *et seq*. After our review, we affirm.[3]

The facts of this case are set forth by the trial court as follows:

On April 1, 2015, the family became known to the Department of Human Services ("DHS") when [] DHS received a substantiated General Protective Services ("GPS") report alleging that the Child's sibling suffered from dehydration and neglect. On July 10, 2015, an adjudicatory hearing was held before the Honorable Jonathan Irvine who adjudicated the Child dependent. Thereafter, it was determined that Father resided in a halfway house and had an extensive criminal history. On September 25, 2015, the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP"). The goals identified for Father were to comply with the recommendations of the Achieving Reunification Program ("ARC")"). On December 20, 2016, DHS filed the underlying [p]etition to [t]erminate the Father's parental rights to Child. On September 25, 2017, this [c]ourt ruled to involuntarily terminate Father's parental rights to Child pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and 23 Pa.C.S. § 2511(b). Thereafter, Father filed the instant appeal on October 23, 2017.

Trial Court Opinion, 12/15/17, at 2 (citations and footnote omitted).[4]

_____

**filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.**

23 Pa.C.S. § 2511(b) (emphasis added).

[3] We note that Mother's parental rights were involuntarily terminated on September 25, 2017; she is not a party to this appeal.

[4] We note a discrepancy between the court's determination at the conclusion of the hearing and the termination decree. At the conclusion of the hearing, the court stated: "Mother's rights are terminated under 2511(a)(1), (2), (5), (8) and (b)." N.T. Termination Hearing, *supra* at 17, and "Father's parental rights are terminated **under 2511(a)(1), and 2511(b).**" *Id.* (emphasis added). The termination decree, however, lists subsections (a)(1), (2), (5)

Father raises the following issues for our review:

1. Did [DHS] sustain the burden that Father's rights should be terminated when there was no evidence that Father had ever been given the opportunity to establish and maintain permanency goals and reunification?

2. Was there sufficient evidence presented to establish that it was in the best interest of the child to terminate Father's parental rights?

Appellant's Brief, at 4.[5]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are

_____

and (8) as the basis for termination of *Father's* parental rights. **See** Decree of Involuntary Termination of Parental Rights, 9/25/17.

[5] We note that Father filed a *pro se* notice of appeal and a Pa.R.A.P. 1925(b) statement of errors complained of on appeal on October 23, 2017. **See** Pa.R.A.P. 1925(a)(2)(i). In his Rule 1925(b) statement, Father challenged his constitutional and statutory right to proper notice of the hearing. **See** 23 Pa.C.S. § 2513(b). On December 1, 2017, the court appointed counsel for Father, and on December 15, 2017, the trial court filed its Rule 1925(a) opinion. Father's appellate brief as due on January 18, 2018; on February 16, 2018, this Court issued a *per curiam* order noting no brief had been filed, remanding the case for a determination of whether counsel had abandoned Father, retaining jurisdiction and suspending the briefing schedule. We note that Father's counsel filed an appellate brief on March 12, 2018, and included therein an amended Rule 1925(b) statement challenging the sufficiency of the evidence supporting termination along with the appellate brief. In light of the procedural irregularities in this case, the significance of the right involved and the fact that the trial court *did* address the sufficiency issues in its opinion, we will not find waiver.

supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. . . . [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (citations omitted; some formatting added). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000).

Here, the court terminated Father's parental rights based upon 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). However, parental rights may be involuntarily terminated where any one subsection of section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions. *See In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted); *see also In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (when trial court relies upon more than one statutory basis under subsection 2511(a)

for termination of parental rights, we will affirm if we agree with any one basis asserted by trial court).

At the time of the hearing, Child had been in foster placement for a year and a half. N.T. Termination Hearing, 9/25/17, at 12. Father, who was incarcerated at the time of the hearing, did not testify. *Id.* at 5. He was, however, represented at the hearing.[6]

Father had been incarcerated at the time of the initial permanency review hearing, in October 2015, and thereafter failed to make his whereabouts known to DHS and CUA. He also failed to maintain contact with CUA, failed to compete his drug treatment program, failed to consistently visit Child and was repeatedly incarcerated while Child was in foster care. **See** Petition for Involuntary Termination of Parental Rights, Statement of Facts, 12/20/16. The court accepted the parties' stipulation that, if called to testify, the DHS caseworker would testify consistently with the Statement of Facts in the petition.

Vicky Paulino, CUA Case Manager, testified at the termination hearing that she was unable to say when Child last saw Father. N.T. Termination Hearing, **supra** at 15. Paulino also testified that Child was safe, was not receiving any specialized services and was doing well in foster care. **Id.** She stated that Child shares his primary parent-child bond with foster father, who

---

[6] We note that Child's legal interests were advanced by Attorney Lawrence J. O'Connor and Guardian *ad litem* Athena Mary Dooley appeared on behalf of Child's best interests. **See In re: LBM**, 161 A.3d 172 (Pa. 2017).

is willing to adopt Child, and that Child calls foster father "dad." *Id.* at 14. Paulino also testified that Child does not look to Father as a father figure, and that termination of Father's parental rights would not cause Child any irreparable harm. *Id.* at 15.

Based upon the testimony presented at the hearing and the parties' stipulation, the court determined that DHS had met its burden of establishing, by clear and convincing evidence, termination of Father's parental rights was appropriate. Father states in his Statement of Questions Involved that DHS did not meet its burden because he was not given the opportunity "to establish and maintain permanency goals and reunification." Appellant's Brief, at 4. However, in his brief, Father simply argues that he was incarcerated and "DHS never put any goals in place for [F]ather to satisfy to achieve reunification." Appellant's Brief, at 9. Father provides no support for this claim. In fact, he cites to the part of the record that merely confirms that he was incarcerated at SCI Coal Township and that he received notice of the hearing and did not indicate that he wished to participate. N.T. Termination Hearing, *supra* at 5. Moreover, the record contradicts Father's claim; at the adjudicatory hearing in July 2015, Father was referred to the Clinical Evaluation Unit for drug screens, dual-diagnosis assessment and monitoring, as well as to ARC for appropriate services. In September 2015, Father's permanency goal was identification as reunification and Father's objectives were to comply with the ARC program and all appropriate services. *See* Petition for Involuntary Termination, Statement of Facts, 12/20/16.

The initial permanency review hearing was held on October 1, 2015; DHS filed the petition to terminate Father's parental rights on December 20, 2016, over one year later. Child has been in foster care, in the custody of DHS, since November 5, 2015. During this time, while Child was in placement, the court found that Father had not meaningfully participated in services or made efforts to maintain contact with Child. Father did not appear at the hearing and did not explain his conduct over the past twenty-three months. *See In re: J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003); *see also In re: D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (incarceration is not free pass to avoid responsibilities attending role of parent). The court's findings are supported by the record. *In re Adoption of S.P.*, *supra*.

DHS established by clear and convincing evidence that Father's conduct, for the six months preceding the filing of the petition, has evinced a "settled purpose of relinquishing parental claim to [C]hild or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). Further, the court found that termination of Father's parental rights would not negatively impact Child and that termination was in Child's best interests. *See* 23 Pa.C.S. § 2511(b); *see also In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists; extent of bond-effect analysis necessarily depends on circumstances of particular case). Further, common sense dictates that courts considering termination "must also consider whether the children are in a pre-adoptive home and whether they

have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013), citing ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012).

The court's findings are supported in the record. We conclude, therefore, that the court, properly terminated Father's parental rights under 23 Pa.C.S. §§ 2511(a)(1) and (b).

Order affirmed.

Judge Shogan joins the Memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/18