J-S44017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF : I.O.S., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.G., MOTHER | | |
| | : | No. 15 EDA 2018 |

Appeal from the Order Entered November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0001109-2017,
CP-51-DP-0000832-2016, FID:  51-FN-002865-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: D.N.S., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.G., MOTHER | | |
| | : | No. 17 EDA 2018 |

Appeal from the Order Entered November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000972-2016,
CP-AP-0001110-2017, FIN:  51-FN-002865-2013

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 27, 2018**

M.G. (Mother) appeals the trial court's termination of her parental rights

to her children, I.O.S. and D.N.S., born March 2016 (collectively, Children) [1],

---

[1] Children's older sibling, J.G., is not subject to this appeal.

pursuant to Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511.[2]  After careful review, we affirm.

The family first became involved with the Philadelphia Department of Human Services (DHS) in July 2013, following an allegation that Mother had unnecessarily performed cardiopulmonary resuscitation (CPR) on her three-week-old child, J.G.  Mother stated that J.G. was bleeding and she was afraid he was not breathing.  The report averred that Mother had a seizure disorder and mental health issues, and that her family was attempting to obtain emergency mental health treatment for her.  After being discharged from the hospital, J.G. was removed from Mother's care and placed with a paternal aunt.  In March 2015, Dr. William Russell performed a parenting capacity evaluation of Mother.

Children, who are the subject of the instant appeal, subsequently were born prematurely and in respiratory distress in March 2016.  The day after their birth, DHS received a report that: 1) Mother had tested positive for phencyclidine (PCP); 2) Mother had been diagnosed with paranoid schizophrenia and substance abuse; and 3) Mother was non-compliant with prenatal care.  The report further specified that Mother was undergoing one-on-one observation in a psychiatric ward as she was experiencing auditory

_____

[2] J.S. (Father) voluntarily relinquished his parental rights.  **See** N.T., 11/30/17, at 4.  Father is not a party to this appeal, nor did he file a separate appeal.

and visual hallucinations. In April 2016, Mother admitted to DHS that she suffered from paranoid schizophrenia and could not care for Children.

In April 2016, DHS obtained an Order for Protective Custody (OPC) for Children. They were placed with a maternal aunt and adjudicated dependent in May 2016.[3] In December 2016, the court ordered Children to remain in placement, with Mother allowed supervised visits. However, throughout most of the history of this case, Mother has resided in Florida and failed to attend visits with Children.

In February 2017, the Community Umbrella Agency (CUA) held a Single Case Plan (SCP) meeting. The objectives identified for Mother were to: 1) continue mental health treatment; 2) comply with all clinical evaluation recommendations; 3) attend supervised weekly visits with the Children when offered; 4) comply with all court orders; 5) complete parenting classes; 6) enter drug and alcohol treatment; and 7) maintain negative random drug screens.

Mother's parental rights to J.G. were terminated in January 2017. In November 2017, due to Mother's failure to meet her objectives, DHS filed a petition to terminate Mother's parental rights to Children and change their permanency goal to adoption. At that time, Children had been in pre-adoptive kinship care for over fifteen months.

---

[3] Children were not placed with Father because he did not have adequate housing; he lived next door to Mother and there were concerns that he was allowing her to see J.G. and Children unsupervised. *See* N.T., 11/30/17, at 6-7.

In November 2017, the court convened a hearing. DHS presented the testimony of Melissa Urrutia, the CUA case manager. *See* N.T., 11/30/17, at 2-4. All parties stipulated to DHS' statement of facts as included in the petition to terminate Mother's parental rights. *Id.* at 5, 22. Mother was represented by counsel and testified on her own behalf. *Id.* at 3. Children were represented by a guardian *ad litem* (GAL), Jalaine Stokes, Esquire, and legal counsel, Jeffrey Bruch, Esquire. *Id.* at 1.

Following the conclusion of DHS' case in chief, the court granted the petition pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and terminated Mother's parental rights. The court proceeded to a permanency review hearing and entered orders changing Children's permanency goals to adoption.

On December 26, 2017, Mother contemporaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Pa.R.A.P. 1925(a) opinion on March 8, 2018.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to [23 Pa.C.S.A. §] 2511(a)(1) where [Mother] presented evidence that she made efforts to perform her parental duties.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to [23 Pa.C.S.A. §] 2511(a)(2) where Mother presented evidence that she made efforts to remedy any incapacity or neglect.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to [23 Pa.C.S.A. §] 2511(a)(5) and (a)(8) where evidence was provided to establish that the children were removed from the care of Mother, however Mother is currently capable of caring for the children and the conditions which led to removal have been remedied.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to [23 Pa.C.S.A. §] 2511(b) where evidence was presented that Mother has a parental bond with the children that would be detrimental to sever.

Mother's Brief at 8.[4]

We review cases involving the termination of parental rights according to the following standards.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

_____

[4] Mother challenged the goal change to adoption in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b) Statement, 11/3/17, at 1. However, Mother appears to have abandoned this claim on appeal and does not discuss it in her brief. Accordingly, she has waived this claim on appeal. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006); *see also* Pa.R.A.P. 2101; Pa.R.A.P. 2119(b)-(c).

The court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). When reviewing a termination petition, the trial court must engage in a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). To affirm, we need only agree with any one of the subsections of 2511(a), as well as subsection (b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we focus our analysis on Subsection (a)(2) and (b).

The relevant sections of 23 Pa.C.S.A. § 2511 provide that:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> \*\*\*

- 6 -

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998).  The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.  *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).  Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties.  *Id.*

Mother claims that the court erred in terminating her rights under Section 2511(a)(2) because she has engaged in mental health treatment in Florida, although she admittedly did not provide documentation to the court.  *See* Mother's Brief at 17-18.  Mother additionally claims the court failed to consider that with further treatment and therapy, she "may have the potential to have the capacity" to provide safety and permanency to Children.  *Id.*

Aside from Mother's self-serving testimony, the record is devoid of any evidence that Mother received mental health treatment in Florida. Indeed, the evidence showed otherwise, as the CUA case manager and Mother herself testified that 1) Mother was not compliant with her objectives, including mental health treatment, random drug screens, or attending a substance abuse program; 2) Mother visited Children only once in the last year, and her only explanation was that she had moved to Florida; 3) Mother did not call to inquire about Children or perform any parental duties for Children; and 4) although Mother had moved back to Philadelphia one month prior to the hearing, she had not visited Children or received substance abuse treatment. *See* N.T., 11/3/17, at 23-29.

The parenting capacity evaluation, performed in March 2015 and introduced into the record at the termination hearing, reflects numerous concerns. Dr. William Russell noted that Mother has a family support system, stable housing, and has expressed a willingness to seek full time employment. *See* DHS Exhibit 8, at 10. However, at the time of the evaluation, Dr. Russell did not recommend reunification due to Mother's "inconsistency in treatment, following prescribed medication protocols, endorsement of positive symptoms of psychosis, chronic exposure to domestic violence, and lack of understanding regarding ongoing DHS involvement." *Id.* Further, because her symptoms are chronic and often difficult to treat, and because Mother did not arrange treatment for her neurological disorder, it was Dr. Russell's opinion that Mother had not, and likely would not, develop the capacity to provide for

Children's safety and permanency in the future. ***Id.*** Significantly, at the time of the hearing in November 2017, over two and a half years later, Mother's incapacity had not changed. ***See*** N.T., 11/30/17, at 20-22.

Accordingly, the trial court properly found by competent, clear, and convincing evidence that Mother's parental rights should be terminated pursuant to Section 2511(a)(2), as her continued incapacity caused Children to be without essential parental care, and the causes could not be remedied. ***See Lilley***, 719 A.2d at 330; ***Z.P.***, 994 A.2d at 1117.

Next, we must consider Children's needs and welfare pursuant to Subsection 2511(b). ***See Z.P.***, 994 A.2d at 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***Id.*** The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. ***Id.*** Ultimately, the concern is the needs and welfare of a child. ***Id.*** Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. ***In re: K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008).

We have noted:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is

usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)).

Here, the trial court accepted as credible the social worker's testimony that Mother had seen Children only once in the past year, and that she had moved to Florida while Children remained in Pennsylvania. *See* N.T., 11/30/17, at 22-24. Children had been in care for their entire lives. *Id.* at 26. Ms. Urrutia opined that it was in Children's best interests to terminate Mother's parental rights and change their permanency goals to adoption because 1) Mother was no closer to reunification than she had been when Children were placed; 2) there would be no irreparable harm to Children; 3) Children were healthy and thriving in their placement; and 4) Children were in kinship care with a foster parent who wished to adopt them along with their older brother, J.G. *Id.* at 26-27. On this record, indicating that there was no bond between Mother and Children, clear and convincing evidence supports the trial court's termination of Mother's parental rights with respect to Section 2511(b), where adoption would best serve Children's needs and welfare. *See Z.P.*, 994 A.2d at 11126-27.

For all of the above reasons, we affirm the termination of Mother's parental rights to Children.

Orders affirmed.

- 10 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/18