J-S48016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.M.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R.W., FATHER | No. 2024 EDA 2017 |

Appeal from the Decree Entered May 25, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000098-2017

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 28, 2018**

J.R.W. (Father) appeals from the decree involuntarily terminating his parental rights to his minor daughter, S.M.W. (Child), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[1]  After careful review, we affirm.

Child was born in December 2015.  At the time of the birth, both Mother and Child tested positive for marijuana and cocaine.   The Philadelphia Department of Human Services (DHS) subsequently filed an application for an order of protective custody (OPC) for Child, averring that Mother had a history of substance abuse and mental health issues and was non-compliant with treatment; and that Father had a lengthy substance abuse and criminal

_____

[1] The parental rights of T.E.B. (Mother) were also terminated at this time.  She separately appealed, and the termination was affirmed. ***See In the Interest of S.M.W.***, 181 A.3d 436 (Pa. Super. 2017) (unpublished memorandum).

_____

*   Retired Senior Judge assigned to the Superior Court.

history. The trial court granted the application and Child was placed in foster care, where she has remained since.

Following a shelter care hearing, the trial court lifted the OPC and ordered Child's temporary commitment to stand. Parents were granted supervised visitation at DHS. In January 2016, Child was adjudicated dependent and fully committed to DHS. Father was referred to the Clinical Evaluation Unit (CEU) for drug screens, dual assessment, and three random drug screens. The Community Umbrella Agency (CUA) held a single case plan (SCP) meeting. The objectives identified for Father were to comply with court ordered random drug screens and with the recommendations of the CEU dual assessment.

Periodic permanency reviews showed that Father was either moderately or minimally compliant with his objectives. In April, July, August, September, and November 2016, Father returned positive drug screens. Although Father reported that he was attending substance abuse treatment at the Wedge Medical Center – North, the center indicated Father had never attended his intake appointment and was discharged from the program in April 2016.

In January 2017, DHS filed petitions seeking to involuntarily terminate the parental rights of Mother and Father and change Child's goal to adoption. At that time, Child had been in pre-adoptive foster care for the entirety of her life, over seventeen months.

In May 2017, the court convened a hearing. DHS presented the testimony of Gaylen Brunson, the Wordsworth CUA case manager. *See* N.T.,

5/25/17, at 2. Additionally, DHS' exhibits 1-11, including its statement of facts in support of its petition to involuntarily terminate Father's parental rights, were entered into the record without objection. **See** Decree, 5/25/17, at 2. Father was represented by counsel and testified on his own behalf. **See** N.T., 5/25/17, at 26-30. He introduced an appointment slip for JFK Behavioral Health to show that he had been attending a dual diagnosis program for mental health and drug and alcohol treatment, although the caseworker stated he was unaware that Father was attending treatment. **Id.** at 22, 26-27.

Child was represented by Deborah Fegan, Esquire, as Child's counsel, and Angelina Dagher, Esquire, as guardian *ad litem* (GAL). **Id.** at 1, 31. Both counsel and GAL agreed it was in Child's legal interests and best interests for Father's rights to be terminated and Child to be adopted. **Id.** at 31.

Following the conclusion of DHS' case in chief, the court granted the petition pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and terminated Father's parental rights. The court also entered an order changing Child's permanency goal to adoption.

Father contemporaneously filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

_____

[2] Father *pro se* timely filed a notice of appeal and concise statement of errors complained of on appeal on June 23, 2017. In September 2017, we remanded the matter to determine whether counsel had abandoned Father and whether further action was necessary to protect his appellate rights. Following remand

On appeal, Father raises the following issues for our review:

1. Did the trial court err in terminating [Father's] parental rights under [23 Pa.C.S.A. § 2511(a)?]

2. Did the trial court err in finding that termination of parental rights best served the child's developmental, physical and emotional needs under [23 Pa.C.S.A. § 2511(b)]?

3. Did the trial court err in changing the child's goal to adoption?

*See* Father's Brief at vi (unnecessary capitalization, proposed answers, and answers below omitted).

We review cases involving the termination of parental rights according to the following standards:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

_____

and counsel's failure to file a docketing statement as ordered, we vacated counsel's appointment and directed the trial court to determine whether Father was entitled to new court-appointed counsel. New counsel was appointed and ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal by December 1, 2017. New counsel filed her statement in the lower court on December 1, 2017, and in this Court on December 11, 2017. Accordingly, we remanded to determine whether Father had been abandoned by counsel. On May 30, 2018, the trial court responded that counsel had not abandoned Father, and that counsel would be filing an appellate brief that week.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Here, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). To affirm, we need only agree with any one of the subsections of 2511(a), as well as subsection (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we focus our analysis on Sections (a)(2) and (b).

The relevant sections of 23 Pa.C.S. § 2511 provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*** 

      (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Father argues that the court erred in terminating his rights under Section 2511(a)(2) because he was participating in mental health treatment and drug and alcohol treatment, and was visiting consistently with Child. Father's Brief at 3-4. He contends there was no evidence introduced which

would establish that the conditions causing the original placement were not remedied. *Id.* at 4.

This is, at best, a disingenuous representation of the evidence introduced at the hearing. Although Father regularly visited with Child, the evidence introduced at the hearing established that Father was not compliant with his SCP objectives. Specifically, he was not attending outpatient drug and alcohol treatment and regularly tested positive for various controlled substances including marijuana, cocaine, and PCP throughout the pendency of this case, and as recently as two months prior to the termination hearing. *See* DHS Exhibit 7-9. Although Father introduced an appointment slip in an attempt to show that he was attending treatment, the caseworker was unaware of Father's attendance, and Father was discharged from the program in April 2016. *See* TCO at 5-6; Father's Exhibit 1. The trial court credited this evidence and we afford great deference to such findings. *See T.S.M.*, 71 A.3d at 267.

Accordingly, we conclude that the trial court properly found by competent, clear, and convincing evidence that Father's parental rights could be terminated pursuant to Section 2511(a)(2), based on the finding that Father evinced a continued incapacity – his drug abuse – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Section 2511(b). *See Z.P.*, 994 A.2d at 1121. "In

this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *In re: K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

We have noted:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)).

Father testified that he visits regularly and has a bond with Child. *See* N.T., 5/25/17, at 29-30. However, the case manager testified that although Father is consistent with his visits, caseworkers have to encourage Father and Child to bond. *Id.* at 19. Instead of playing with Child, Father focuses on his cell phone. *Id.* Father was referred to parenting classes, but did not attend. *Id.* at 21. The caseworker opined that it would be in Child's best interests for

Father's parental rights to be terminated and Child's goal changed to adoption, and that Child would not suffer irreparable harm as a result of the termination. *Id.* at 19-20. The court credited the caseworker's testimony over that of Father. *Id.* at 32. On this record, indicating that there was no bond between Father and Child, who had been in care for her entire life, clear and convincing evidence supports the trial court's termination of Father's parental rights with respect to 2511(b), where adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27.

Finally, Father contends that the court erred in changing Child's permanency goal to adoption. Father's Brief at 6-7. Father reiterates his prior arguments – that from the time Child came into care, Father visited consistently with her, and that Father was in both mental health and drug and alcohol treatment. *Id.* at 7. Father claims it is in Child's best interest to be with her father rather than strangers. *Id.*

The appeal from the goal change determination is not properly before us. Father appealed solely from the termination docket, CP-51-AP-0000098-2017; he did not appeal from the goal change order entered on the dependency docket. *See* Notice of Appeal, 5/25/17, at 1-19; *see also* Permanency Review Order, 5/25/17, at 1-2; *see also* Decree of Involuntary Termination of Parental Rights, 5/25/17, at 1-2. Accordingly, we lack jurisdiction to consider that merits of this issue. *See* Pa.R.A.P. 902 (providing manner of taking appeal); Pa.R.A.P. 903 (providing thirty days to file a notice

of appeal); *see*, *generally*, ***In re Adoption of W.R.***, 823 A.2d 1013, 1015-16 (Pa. Super. 2003).

For all of the above reasons, we affirm the termination of Father's parental rights to Child.

Decree affirmed.

Judge Platt joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/18