**In the Interest of C.S.**

**Appeal of C.S., Sr., Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 2000.
Filed Oct. 26, 2000.

Betty A. Simon, Philadelphia, for appellant.

Cynthia N. Keller, Philadelphia, for C.S., appellee.

BEFORE: CAVANAUGH, KELLY, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, EAKIN, STEVENS, and TODD, JJ.

TODD, J:

¶ 1 Appellant, C.S., Sr., appeals the order of the Court of Common Pleas of Philadelphia County terminating his parental rights to his son, C.S., Jr. (C.S.). For the reasons stated below, we affirm.

¶ 2 The record of the termination hearing reveals the following background. C.S. was born on August 6, 1992 in Philadelphia, Pennsylvania. (N.T., 8/13/98, at 10.) He was placed in a foster home on November 30, 1994 after a General Protective Services report was received by the Philadelphia Department of Human Services (DHS). (*Id.* at 11–12.) The report indicated that under the care of their mother, C.S. and his older brother, W.S.,[1] were dirty, neglected, and living in a filthy, roach-infested house with exposed wires. (*Id.* at 13.) On February 14, 1995, C.S. was adjudicated dependent. (*Id.* at 10–11.) The parental rights of C.S.'s mother, K.S., were terminated in 1998. (*Id.* at 11.)

¶ 3 C.S. has been living in the same foster home since his placement in November of 1994. (*Id.* at 10, 14.) C.S.'s younger brother, R.S., was born in August 1995 and placed in the same foster home. (Trial Court Exhibit No. 11, at 2.) The foster parents are presently in the process of adopting R.S.,[2] and would like to adopt C.S. and W.S.[3] if the children's goals are

---

1. W.S. was born on *June 17, 1988.* (N.T., 8/13/98, at 9.)

2. Parental rights to R.S. have already been terminated.

3. Appellant is the putative, but not the biological father, of W.S. (N.T., 8/13/98, at 10.)

changed to adoption. (N.T., 8/13/98, at 14, 17.)

¶ 4 Appellant, father of C.S., has a history of criminal behavior dating back to 1986. (*Id.* at 18–19.) He has been incarcerated multiple times for various offenses, including assault, robbery, burglary, and possessing and dealing in controlled substances. (*Id.* at 24–33.) He was incarcerated at the time of C.S.'s birth and, but for one month, has been incarcerated since that time. (*Id.* at 11, 62.) He currently is serving a sentence for possession of a controlled substance at a state correctional center in Pittsburgh, Pennsylvania. (*Id.* at 10, 29.) His early release date was June 1999 and his maximum release date is September 2003. (*Id.* at 10.) There is no evidence that Appellant ever lived with C.S. (*Id.* at 11–12.)

¶ 5 A petition for termination of Appellant's parental rights and to change C.S.'s goal to adoption was filed by DHS in February 1998. The trial court held a termination hearing on August 13, 1998, in which Appellant participated by phone from prison. Except for the testimony of Appellant, the evidence at the hearing consisted of stipulated testimony and exhibits from counsel. Following that hearing, the court determined that Appellant's parental rights should be terminated, but held any order to that effect in abeyance. Further argument was heard on September 8, 1998. Immediately thereafter, the trial court issued a decree terminating Appellant's parental rights, changing C.S.'s goal to adoption, and denying Appellant's request for reconsideration.

¶ 6 On appeal, a three-judge panel of this Court reversed the order of the trial court because the petition for termination did not appear of record. *In re C.S.*, No. 3128 Philadelphia 1998 (Pa.Super. filed January 7, 2000) (unpublished memorandum). Subsequently, the record was supplemented with the petition and we allowed reargument *en banc*.

¶ 7 Appellant raises three issues on appeal: [4]

1) Did the trial court err in finding that Petitioner had established by clear and convincing evidence that the statutory requirements for involuntary termination of parental rights were met where the child was not removed from Appellant's care?

2) Did the trial court err in finding that Petitioner had established by clear and convincing evidence that the statutory requirements for involuntary termination of parental rights were met where the incarcerated father (Appellant) maintained contact with the children through visits, birthday cards and presents with the assistance of his family?

3) Did the trial court err in finding that Petitioner had established by clear and convincing evidence that involuntary termination of Appellant's parental rights best serves the needs and welfare of the children where the trial court record is devoid of expert or lay opinion testimony?

(Appellant's Brief, at 3.)

¶ 8 When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa.Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. *See In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992).

¶ 9 Permissible grounds for involuntary termination of parental rights are specified

---

**4.** We have paraphrased Appellant's issues for ease of reference.

in 23 Pa.C.S.A. § 2511. The trial court founded its decree of termination on subsections 2511(a)(1), (5), and (8). (Decree of Involuntary Termination of Parental Rights, 9/8/98.) Section 2511 provides in relevant part:

**Grounds for involuntary termination**

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: .

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the .child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

■■■ ¶ 10 Appellant first argues that DHS failed to establish, by clear and convincing evidence, the requirements of subsection 2511(a)(5) because C.S. was not removed from Appellant's care as C.S. was never in Appellant's care. Indeed, Appellant was incarcerated at the time C.S. was removed by DHS. As a result, Appellant asserts that DHS has not proven a requirement of subsection 2511(a)(5), that the child has been removed from the care of the parent for a period of six months. We agree. Termination under. subsection 2511(a)(5) was not appropriate here because the record reflects that C.S. was never in Appellant's care and, therefore, could not have been removed from his care.

■ ¶ 11 However, that does not end the matter. While the trial court, in its opinion, based its decision to terminate on an application of subsection 2511(a)(5), its decree of termination, as we noted, was clearly founded on subsections 2511(a)(1), (5), and (8). (Decree of Involuntary Termination of Parental Rights, 9/8/98.) Thus, while we disagree with the trial court's assessment of the applicability of subsection (a)(5) and, for the same reason, (a)(8) [5], for the reasons discussed below,

**5.** As subsections (a)(5) and (8) are both predicated on removal of the child from the care of

the parent, they are similarly inapplicable in this context.

we find termination is appropriate under subsection (a)(1). We may, of course, affirm the trial court on grounds other than those specified in its opinion. *See Weber v. Lynch*, 237 Pa.Super. 48, 346 A.2d 363, 366 n. 6 (1975) (noting that we may uphold a decision below if there exists *any* proper basis for the result reached), *aff'd*, 473 Pa. 599, 375 A.2d 1278 (1977); *In re Damon B.*, 314 Pa.Super. 391, 460 A.2d 1196, 1198 (1983) (affirming visitation order on grounds other than those relied on by trial court); *cf. In re F.L.D.*, 317 Pa.Super. 473, 464 A.2d 419, 422–23 (1983) (affirming termination order on one set of grounds despite asserted constitutional infirmity on other grounds).

¶ 12 Regarding the application of Section 2511(a)(1), our Supreme Court has stated:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination.

*Matter of Adoption of Charles E.D.M. II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998) (citations omitted). Further,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties.

*Id.* at 602, 708 A.2d at 91 (emphasis original) (citations omitted).

¶ 13 Except for approximately one month, since C.S.'s birth Appellant has been incarcerated. (N.T., 8/13/98, at 62.) He was arrested and imprisoned prior to C.S.'s birth and was not released until March 12, 1994. *Id.* at 62, 346 A.2d 363. He was re-arrested and incarcerated just one month later, in April 1994. *Id.* As the trial court noted, Appellant has demonstrated his patent inability to forswear his criminal activities and stay out of trouble. (Trial Court Opinion, 12/21/98, at 3.)

¶ 14 Appellant argues, in essence, that he has made a good faith effort to maintain a parent-child relationship with C.S. despite his incarceration. We agree that incarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during his incarceration. *In re D.J.S.*, 737 A.2d 283, 286 (Pa.Super.1999). Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. *Id.* at 287. Further, parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. *Id.* (quoting *In re Dale A., II*, 453 Pa.Super. 106, 683 A.2d 297, 302 (1996)).

¶ 15 We note that, even for the sake of his child, apparently Appellant cannot stay out of jail. Further, the trial court concluded, and we find that the record supports its conclusion, that despite his incarceration Appellant has not made every possible effort to stay in touch with his child and to participate, however vicariously, in his child's life. (Trial Court Opinion, 12/21/98, at 3.) His contact with C.S. consists largely of court-ordered quarterly vis-

its begun on May 30, 1996.[6] (N.T., 8/13/98, at 19.) In addition, Appellant testified that, to some unspecified degree, his mother takes gifts to C.S. on his behalf. (*Id.* at 47–49.)

¶ 16 Appellant has taken little initiative on his own to maintain a parent-child relationship with C.S. By the time of the termination hearing, C.S. had been living with his foster family for over three and one-half years. During that time, Appellant sent to C.S., at most, three letters, all during 1995, and birthday cards in 1995, 1996, and 1997. (*Id.* at 21.) Appellant admitted that the prison would have provided him, at no cost, with enough paper, envelopes and postage to mail ten letters per year. (*Id.* at 20, 52.) Obviously, he did not take advantage of this opportunity. Thus, despite the fact that he was facing termination of his parental rights, he had not corresponded with C.S. since August 1997. *Id.* at 21. Further, he had never asked for pictures, reports cards, or updates on C.S. (*Id.* at 19.) He placed one phone call to his child while in prison.[7] (*Id.* at 21.) Appellant had never inquired of DHS what would be required to regain custody of C.S. and had written to the DHS case worker no more than three or four times. (*Id.* at 19.) He had never written to C.S.'s foster parents. (*Id.* at 21.)

¶ 17 We conclude that the record reveals clear and convincing evidence that Appellant's conduct reflects a settled intent to refuse or fail to perform parental duties for at least six months prior to the petition for termination and that Appellant has not made a good faith effort to maintain a parent-child relationship with C.S. Therefore, termination of Appellant's parental rights is appropriate under Section 2511(a)(1). Our conclusion here is necessarily a rejection of Appellant's second issue on appeal – that there was insufficient evidence to terminate his rights based on

his contact with C.S. through visits, birthday cards, and presents with the assistance of his family.

■■■■ ¶ 18 Appellant's last contention on appeal is that there lacked clear and convincing evidence that termination of his parental rights best serves the needs and welfare of C.S., where, he asserts, the record was devoid of expert or lay opinion testimony on that issue. We recognize that the primary consideration in the termination of parental rights is the best interests of the child. 23 Pa.C.S.A. § 2511(b). Indeed, as this Court has stated,

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the *intangible* dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension." *In re Matsock*, 416 Pa.Super. 520, 540, 611 A.2d 737, 747 (1992). "Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful." *In re William L.*, 477 Pa. 322, 348, 383 A.2d 1228, 1241 (1978). The trial court, "in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial." *In re P.A.B.*, 391 Pa.Super. 79, 86, 570 A.2d 522, 525–26 (1990), *appeal dismissed*, 530 Pa. 201, 607 A.2d 1074 (1992).

*In re Bowman*, 436 Pa.Super. 10, 647 A.2d 217, 219 (1994), *aff'd by an equally divided court*, 542 Pa. 268, 666 A.2d 274 (1995) (emphasis original).

¶ 19 We disagree with Appellant's argument that the record does not support the

---

**6.** Given *Appellant's* incarceration in Pittsburgh, these visits by C.S. require substantial travel.

**7.** At that time, Appellant was told by the foster parents that they would not accept any further collect calls from him. (N.T., 8/13/98, at 21.)

trial court's determination that termination is in the best interests of C.S. C.S. has been living with his foster parents and his two brothers since November 1994. The record reveals that the foster parents love C.S., that he calls them mom and dad, and that they would like to adopt C.S. and his brother, W.S., and are in the process of adopting his other brother, R.S. (N.T., 8/13/98, at 22.) On December 18 and 30, 1997, Dr. Nathan Wagner, a psychiatrist, performed a mental health evaluation of C.S., after observing him with his foster mother and by himself. In his report – which was a stipulated part of the trial court record (N.T., 7/24/98, at 5; 8/13/98, at 38, 84) – he made the following recommendations:

> 1. It would be in [C.S.'s] best interests that he should be allowed to remain with his foster parents ... on a long term basis. They have indicated their desire for him to remain with them, in the company of his biological brothers, whom they wish to adopt as well. [C.S.] has formed strong relationships with his foster parents, and is almost certain to suffer negative emotional and behavioral sequelae if he is removed from this situation.
>
> 2. [C.S.] has formed strong bonds with both of his biological siblings, [W.S.] and [R.S.]. It would be in [C.S.'s] best interests if he were able to remain in the same home with them. The three

brothers, despite their differences in age, have clearly come to depend on each other and to gain support from each other. Breaking up this trio would most likely have highly detrimental effects on the emotional development of all the boys involved.

(Trial Exhibit No. 11, at 8.) [8] We find that the record provides ample evidence to support the trial court's conclusion that termination of Appellant's parental rights is in the best interests of C.S. Thus, we must reject Appellant's argument.

¶ 20 For the reasons given above, we find that termination of the parental rights of Appellant was justified under 23 Pa. C.S.A. § 2511(a)(1) and affirm the order of the trial court on this basis.

¶ 21 Order affirmed.

8. Dr. Wagner's report also contained the following pertinent conclusions concerning C.S.:

[C.S.] was referred by the court to assess the quality of his relationships with his foster mother and his biological siblings. The court is interested in assessing the potential emotional impact of separation from these individuals upon [C.S.]. During the course of the evaluation, [C.S.] demonstrated a strong, involved, and loving relationship with his foster mother. Observation of [C.S.'s] behavior gives the strong impression that [C.S.] has formed a deep attachment with [his foster mother]. It is the case that any separation from her is highly likely to induce in [C.S.] very negative effects in terms of emotional and behavioral functioning. He relates to her as children his age would relate to a biological parent. For all intents and purposes, [his foster mother] occupies the position of emotional parent figure for [C.S.]. Any disruption of their relationship would be surely detrimental to his future development.

The same is the case vis a vis [C.S.'s] relationship with both of his siblings, [R.S.] and [W.S.]. Observation strongly suggests that [C.S.] has developed strong and supportive relationships with both of his siblings. Separation from either [R.S.] or [W.S.] is highly likely to be detrimental to [C.S.'s] emotional development, as he has lived with these individuals for most of his life and has formed strong bonds with them. [C.S.] would very likely experience great difficulty in understanding why he was separated from his brothers if this eventuality indeed came to pass. As is typical of children [C.S.'s] age, it would not be surprising if [C.S.] were to conclude that he was somehow at fault in terms of any separation from either [W.S.] or [R.S.]. (Trial Court Exhibit No. 11, at 7–8.)