J-S45003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.I.C., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C. | | |
| | | No. 548 MDA 2018 |

Appeal from the Decree Entered February 28, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s): 2 AD 2018
CP-22-DP-0000060-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: J.I.C., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C. | | |
| | | No. 549 MDA 2018 |

Appeal from the Decree Entered February 28, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s): 3 AD 2018
CP-22-DP-0000062-2014

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

JUDGMENT ORDER BY PANELLA, J.          **FILED OCTOBER 03, 2018**

C.C. ("Father") appeals from decrees entered February 28, 2018, which granted the petition filed by the Dauphin County Social Services for Children and Youth and terminated his parental rights to his children, N.I.C. (born March 2008) and J.I.C. (born January 2010), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b) of the Adoption Act. We affirm.

_____
* Retired Senior Judge assigned to the Superior Court.

For a recitation of the facts and procedural history of this case, we refer the reader to the trial court opinion. **See** Trial Court Opinion, filed 4/25/18, at 1-4.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to the questions raised on appeal. The trial court's thorough opinion, filed on April 25, 2018, comprehensively discusses and properly disposes of the two questions presented on appeal. We adopt that opinion as our own and affirm.

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/03/2018

ORIGINAL

IN THE MATTER OF

N██ I█████ C█████ ᴬ

    Minor

and

J█████ I████ C█████
    Minor

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
:
:
: NO. 2 AD 2018/CR-22-DP-60-2014
:
:
:
: NO. 3 AD 2018/CR-22-DP-62-2014
:
:
:

## TRIAL COURT OPINION

This appeal follows the termination of the parental rights by Decree of February 26, 2018, of C████ C███ ("Father") to N████ I████ C████("N.I.C.") born March ██ 2008, and Jazell I███ C████("J.I.C.") born January ██ 2010. By Decree of the same date, the Court terminated the parental rights of U███ S███ ("Mother"). Mother does not appeal.

At the conclusion of the hearing on the Petition for Termination of Parental Rights and Goal Change to Adoption on February 26. 2018, we placed on the record our reasons in support of the Decree. (Transcript of Proceedings, Involuntary Termination, February 26, 2018, pp. 99-103)(hereinafter, "N.T."). We amplify those reasons with this Opinion.

FACTUAL BACKGROUND

In February 2014, Dauphin County Social Services for Children and Youth ("Agency") received a referral that N.I.C., J.I.C. ("Children") and two siblings lacked proper supervision. [1]

---

[1] The February 26, 2018 Decree also terminated the parental rights of different fathers to siblings N.M.K., N.A.W. and C. E.S.. Fathers to those children did not appeal.

1

(N.T. pp. 12- 13). At the time, Mother allowed her grandmother, who was in failing health, to care for the children. The Agency created a Family Service Plan which included the services of Short Term Therapeutic Outreach to Prevent Placement. *Id.* However, on April 7, 2014, police found J.I.C., then age 4, wandering unsupervised at a high traffic intersection. *Id.* The Dependency Court Master held a shelter care hearing on April 10, 2014. Following an adjudication and disposition hearing on April 16, 2014, the Dependency Court deemed the children dependent and ordered them placed in the care and custody of the Agency. (N.T. p. 14). Father did not attend the hearings. *Id.*

Father first presented himself to the Agency in August 2015 and requested visits with N.I.C. and J.I.C. (N.T. p. 33; N.T. p. 36). Father acknowledged receipt of the Family Service Plan. (N.T. p. 81). The Agency established, and provided Father with, the service objectives. Father participated in meeting those objectives as follows:

1. Reimburse Dauphin County for child support expenses related to the Children.

   The Agency relieved Father of this requirement based upon his incarceration. (N.T. p. 33).

2. Maintain consistent contact with the Children.

   Father completed visitation orientation and attended two supervised visits with the children in September 2015. (N.T. p. 34; N.T. p.48). On September 29, 2015, Father was incarcerated and did not complete the next scheduled visit. (N.T. pp. 34-35).

3. Notify the Agency within 24 hours of a new residence or new contact information.

   Father did not notify the Agency of his incarceration.

Although aware of their placement, Father did not maintain contact with the Children. (N.T. p. 62). Mother gave birth to a fifth child in January 2016. In April 2016, based upon Mother's

2

progress toward her goals, the Agency returned the Children to Mother's care under court-ordered protective supervision. (N.T. p. 62). Father had no contact with N.I.C. and J.I.C. while the case remained open and the Children resided with Mother. (N.T. p.63; N.T. p. 73; p.80). Father stated that he did not maintain contact because he and Mother did not get along. (N.T. p. 73). Because Mother failed to maintain compliance with the goals, the Children were removed from Mother's care on January 25, 2017. (N.T. p. 45).

During 2016 and early 2017, the Agency sent letters to Father at his last known address of 1320 Walnut Street, Harrisburg. (N.T. p. 89; p. 93). No letters were returned to the Agency. (*Id.*). On February 16, 2017, the Agency learned of Father's incarceration at SCI Dallas, where he had been incarcerated on drug charges since October 6, 2016. (N.T. p. 53). Father failed to notify the Agency of his whereabouts. (N.T. p. 67; p. 72; pp. 82-83).

In February 2017, the Agency undertook family finding efforts as to Father's relatives. (N.T. p. 89). The Agency received no responses. (*Id.*)

On April 18, 2017, the Court made a finding of Aggravating Circumstances as to Father for failure to maintain substantial and continuing contact with N.I.C. and J.I.C. for a period of six months.

Father wrote letters to N.I.C. and J.I.C. in late 2017 and early 2018. (N.T. p. 40; pp. 58-59). Although Father knew the phone number of the Children's foster family, Father never called the foster family to speak to the Children. (N.T. p. 81). Father testified that he wrote to the Children at the address of the foster family. (N.T. p. 74).

Father testified that he is eligible for parole in March 2018. From April 2014 through the date of the hearing, Father was incarcerated for three and one half years. (N.T. p. 79) Father testified

3

Father testified that he is eligible for parole in March 2018. From April 2014 through th

of the hearing, Father was incarcerated for three and one half years. (N.T. p. 79) Father te

that after release from incarceration, he plans to live at the Walnut Street residence, whick

his sister inherited upon their mother's death. (N.T. p. 84).

N.I.C. and J.I.C. reside in a foster home with their siblings and two foster siblings. J.I.

resided there since September 2017 and N.I. C. since October 2017. (N.T. p. 37). N.I.C. ai

J.I.C. have progressed well since removal from Mother's custody. The foster family has

consistently ensured that N.I.C. and J.I.C. receive the medication, therapy and educational

support which their mental health concerns require. (N.T. pp. 37-39). The Children interac

with their foster parents and their siblings. (N.T. p. 39). J.I.C. does not know Father. (N.T

64).

## DISCUSSION

The Agency met its burden of proving that statutory grounds exist for and that the childrer
interests require termination of Father's parental rights.

The standard of review governing the trial court's termination of parental rights is well :

Namely,

> When reviewing an appeal from a decree terminating parental
> rights, [the Superior Court] is limited to determining whether the
> decision of the trial court is supported by competent evidence. *See
> In re K.C.W.*, 456 Pa. Super.1, 689 A.2d 294, 298 (1997). Absent
> an abuse of discretion, an error of law, or insufficient evidentiary
> support for the trial court's decision, the decree must stand. *Id.*
> Where a trial court has granted a petition to involuntarily terminate
> parental rights, [the Superior Court] must accord the hearing
> judge's decision the same weight we would give to a jury verdict.
> *See In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996).
> We must employ a broad comprehensive review of the record in
> order to determine whether the trial court's decision is supported
> by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611

4

A.2d 737, 742 (1992). *In re C. S.* 761 A.2d 1197, 1199 (Pa. Super. 2000).

The Agency, as the party seeking termination, bears the burden of establishing by clear and convincing evidence that grounds exist for termination of parental rights. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002). The standard of clear and convincing evidence means "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989).

The Agency sought termination of Father's parental rights based upon the Adoption Act, 23 Pa.C.S. §2511 Section (a)(1) and §2511 Section (a)(2) which provide:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(23 Pa.C.S. §2511 Section (a)( 1 ) and §2511 Section (a)( 2 )).

In considering whether the party seeking termination has satisfied these provisions, the Appellate Court keeps in mind that a parent has an affirmative duty to work towards the return of his or her children. *In re Adoption of J.J.*, 511 Pa. 590, 602, 515 A.2d 883, 889 (Pa. Super. 1986). At a minimum, that "affirmative duty requires that the parent show a willingness to cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet

5

the duties and obligations inherent in parenthood." *Id.* In a termination proceeding, the trial court must consider all the circumstances in determining whether a parent has fulfilled his obligations; the court must further measure the parent's performance in light of what would be expected of any individual under similar circumstances. *Matter of M.L.W.*, 307 Pa. 29, 33-34, 452 A.2d 1021, 1023-24 (1982) *(citations omitted)*. Further, the Appellate Court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights. *In re J.E.* 745 A.2d 1250 (Pa. Super. 2000). See also, *In re J.I.R.*, 808 A.2d 934, 940 n.6 (Pa. Super. 2002). The Superior Court has explained:

> The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> \*\*\*
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

We find that clear and convincing evidence, cited in detail, *supra*, establishes grounds for termination under 23 Pa.C.S. §2511 Section (a)(1). Our Superior Court has explained:

> Section 2511 does not require that the parent demonstrate both a settled

6

> purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties.

*In re: C.S.*, 761 A.2d 1197, 1201 (Pa. Super 2001) citing *Matter of Adoption of Charles E.E.M. II*, 550 Pa. 595, 602, 708 A.2d 88, 91.

Here, with the exception of evidence of a few letters, Father failed to maintain contact with the Children since August 2015.

Although we base our decision upon 23 Pa.C.S. §2511 Section (a)(1), we find that the evidence satisfies grounds for termination under §2511 Section (a)(2) as well.

As to the relevance of a parent's incarceration in applying these statutory provisions, we recognize that incarceration alone is not sufficient to support termination. *In re I.G.*, 939 A.2d 950 (2007). "Each case of an incarcerated parent facing termination must be analyzed on its own facts keeping in mind, with respect to subsection (a)(2), that the child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what she is supposed to be doing in prison." *In re E.A.P.* 944 A.2d 79, 84 (Pa: Super. 2008). "Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and to take affirmative steps to support a parent-child relationship." *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999). Father presented no evidence of parenting resources available during his incarceration or how he availed himself of such resources.

In the instant case, although aware of the Children's placement, Father failed to avoid criminal activity. "Where the parent does not exercise reasonable firmness in 'declining to yield to obstacles' his [parental] rights may be forfeited." *In re A.L.D.*, 797 A.2d 326 (Pa. Super

.2002). Father committed parole violations which resulted in additional incarceration. (N.T. p. 78).

## Best Interests Analysis

Having found that the Agency proved the statutory grounds for termination of parental rights under 23 Pa.C.S. §2511 Section (a)(1) and §2511 Section (a)(2), we undertake a separate "best interests" analysis. Pursuant to Section 2511(b), a court must give 'primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J. E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) *(citations omitted)*. The statute provides,

> Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6), or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

In addition, while "Section 2511(b) does not explicitly require a bonding analysis, analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical and emotional needs and welfare of the child under §2511(b)." *In the Matter of K.K.R.-S., K.M.R., K.A.R.*, 958 A.2d 529, 533 (Pa. Super 2008). The Superior Court has explained:

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

8

The record is devoid of evidence of a bond with Father which, if broken, would cause detriment to the children. Father presented no testimony that he has ever lived with the Children. To the contrary, we find that the Children would suffer if removed from the stable, caring and loving pre-adoptive home.

We recognize that Father professes his love for the Children and seeks additional time within which to prove that he can properly parent after release from incarceration. Father testified as to his plans for his residence and employment after release. In deciding the issue of the best interests of a child, our Appellate Courts have noted that it is essential to allow a child "a chance to have his fundamental needs met without the constant insecurity that comes with knowing that someday, perhaps in the unreasonably distant future, he might again be wrenched away from his committed and capable caregiver." *In re N.C.*, 763 A.2d 913, 919 (Pa. Super. 2000). This Court has grave concerns about the impact upon the Children of additional months of uncertainty and of potential removal from the foster home to live with a father they do not know.

Finally, Father presented no evidence in support of the claim that the Agency failed to properly consider family members as care or adoption resources. No relatives responded to family finding letters the Agency sent nor did any appear at the hearing.

For all of the foregoing reasons, the Decrees of termination should be affirmed.

BY THE COURT:

JOHN F. CHERRY, JUDGE

April 25, 2018