J-S15017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1516 WDA 2024 |

Appeal from the Decree Entered October 31, 2024
In the Court of Common Pleas of Armstrong County
Orphans' Court at No(s):  No. 24 of 2024

BEFORE:  OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: NOVEMBER 19, 2025**

W.S. ("Father") appeals from the decree involuntarily terminating his parental rights to his son, A.A.S. ("Child" or "the Child") (born in September 2023).[1]  This matter returns to this panel following our denial of the petition to withdraw and an accompanying no-merit brief filed by Father's counsel, Andrew J. Cypher, Esquire ("Counsel"), and ordered new briefing.[2]  Counsel has now filed an advocate's brief challenging the sufficiency of the evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5), which requires, *inter alia*, that a child had been "removed from the care of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court terminated the parental rights of A.M.S. ("Mother") pursuant to a petition for voluntary relinquishment of her parental rights.  Mother did not file an appeal or participate in the instant appeal.

[2] *See In re Adoption of A.A.S.*, 1516 WDA 2024, 2025 WL 1756729 (Pa. Super. 2025) (unpublished memorandum decision at *5-6) (hereinafter ***A.A.S. I***).

parent" for a period of six months.[3]  For the reasons that follow, we are constrained to reverse the decree.

The Orphans' Court set forth the relevant facts and procedural history as follows.

> 3.  On September 13, 2023, the court granted [the application of Armstrong County Children, Youth and Family Services ("the Agency")] for protective custody based upon substantial concerns regarding Mother's ability to parent and care for the Child [following birth], such as Mother's indication that she was unaware that she was pregnant and therefore did not receive prenatal care, as well as Mother not feeding or changing the Child unless prompted.  The Child was placed in foster care . . ..  The court entered a shelter care order on September 15, 2023[. Thereafter, the court] adjudicated the Child to be dependent on October 20, 2023 [and established an initial permanency goal of reunification.  The Child's father was unknown at the time.] . . . The Child remained in foster care, where he continues to reside.[4]
>
> 4.  The Child has very specific medical needs.  . . .  The Child is diagnosed with tracheomalacia.  . . .  [T]he Child's trachea, instead of being a rigid pipe, is floppy.  This allows liquids to drain into his lungs and creates a risk of the Child silently choking.  As

---

[3] In full, section 2511(a)(5) provides:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

[4] Child is in a pre-adoptive foster home.  *See* N.T., 10/18/24, at 18.

a result, any liquid or formula that the Child ingests must first be thickened. [T]his is a chronic condition that could lead to death without the proper preparation of the Child's bottles and without proper supervision.

* * * *

6. [After being identified as the Child's father,] Father's paternity was established on December 5, 2023. [Father had not exercised care, custody, or control of Child, and there is no indication that he requested custody of Child upon the confirmation of his paternity.]

7. Father was [thereafter] included in the permanency plan and services were provided to him through Sunrise, an assistance organization that offers parent education and visitation.

Orphans' Court Findings and Memorandum, 11/1/24, at 2-4 (some capitalization omitted).

Throughout the ensuing dependency proceedings, the court held regular permanency review hearings and found Father's compliance and progress to be minimal. *See* Petitioner's Exhibit 1. Significantly, despite engaging in Sunrise's training for the care of Child's special medial needs, Father was unable to master the particulars of Child's feeding or gain a meaningful understanding of Child's medical condition. *See* N.T., 10/18/24, at 23-27.

The Agency referred Father to Dr. Carolyn Menta ("Dr. Menta"), a licensed psychologist, for a parental capacity evaluation. The Orphans' Court summarized Dr. Menta's findings as follows:

8. Dr. Menta conducted the evaluation on April 11, 2024[,] where she found significant concerns about Father's ability to parent. According to her report dated April 27, 2024, Father "shows limited awareness of [the Child's] special needs" and "is lacking in skills for taking care of [the Child]." She further reports that

- 3 -

Father "would require ongoing assistance, support, and monitoring to parent appropriately" and notes that Father "is unable to prepare a bottle for [the Child] and struggles to do basic parenting tasks."

9. During Dr. Menta's evaluation, Father completed the Wechsler Adult Intelligence Scale - IV (WAIS-IV), the Minnesota Multiphasic Personality Inventory - 3 (MMPI-3), and the Child Abuse Potential Inventory - VI (CAPI). While noting difficulties in interpretation of his scores due to inconsistent or unscorable responses, Dr. Menta found that Father's "nonverbal reasoning abilities are much better developed than his verbal reasoning abilities" and that Father "has a moderate intellectual disability."

\* \* \* \*

11. Dr. Menta recommends in her report that Father "participate in parent training classes," emphasizing that "[h]e will likely benefit from having information presented in a variety of modalities, and especially from hands-on instruction."

Orphans' Court Findings and Memorandum, 11/1/24, at 4-5 (some capitalization and brackets in original omitted).

In September 2024, the Agency filed a petition to involuntarily terminate Father's parental rights to Child pursuant solely to 23 Pa.C.S.A. § 2511(a)(5) and included an averment that termination of Father's parental rights would best serve the needs and welfare of the Child. The Orphans' Court held an evidentiary hearing on the Agency's petition in October 2024, at which Child's foster mother and an Agency caseworker testified.[5] The Agency also moved

---

[5] We have reviewed the record *sua sponte* to determine if the Orphans' Court appointed counsel to represent Child's legal interest. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020); *see also* 23 Pa.C.S.A. § 2313(a). The record contains an order by the Orphans' Court appointing Child's
*(Footnote Continued Next Page)*

into evidence a packet of exhibits, including the initial original order for protective custody removing Child from Mother's care, dependency court orders, and Dr. Menta's evaluation of Father. Father, who was present and represented by Counsel, did not testify or offer any evidence.[6] By decree

_____

guardian *ad litem* ("GAL") from the underlying dependency matter to represent Child's legal interest in the termination of parental rights proceedings. **See** Order, 9/10/24. However, the Orphans' Court's appointment order did not memorialize the Orphans' Court's own determination about whether the GAL could represent Child without conflict and improperly delegated to the GAL responsibility for assessing whether Child's best interests and legal interests conflict. **See** Order, 9/10/24 (stating that the GAL "shall immediately advise the [c]ourt, prior to the scheduled hearing . . . if there is a conflict between [C]hild's best interest[s] and . . . legal interests"); **see also Matter of Adoption of A.C.M.**, 333 A.3d 704, 708-09 (Pa. Super. 2025). Moreover, the Orphans' Court did not make its own determination concerning the absence of a conflict between Child's best and legal interests before the hearing. **See** N.T., 10/18/24, at 10-11.

Here, however, Child was only twelve months old at the time the Agency filed the petition to terminate Father's parental rights and thirteen months old at the time of the hearing. There was no indication Child was capable of expressing a preference regarding the outcome of the proceeding. Therefore, we find no structural error or arguably meritorious issue with respect to Child's right to counsel under section 2313(a). **See In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018) ("[I]f the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) . . . is satisfied where the court has appointed an attorney-GAL who represents the child's best interests during such proceedings."). Nevertheless, we remind the Orphans' Court of its critical duty to make a conflict determination prior to the appointment of a dual attorney-GAL in a termination matter. **See K.M.G.**, 240 A.3d at 1235-36; **A.C.M.**, 333 A.3d at 708-09.

[6] At the hearing, the Agency acknowledged the reason for Child's initial placement "was [M]other," but Child "ha[d] been in placement for six months since paternity was established for [Father]." **See** N.T., 10/18/24, at 38. *(Footnote Continued Next Page)*

dated October 31, 2024, and recorded on November 1, 2024, the Orphans'

Court involuntarily terminated Father's parental rights to Child. The court also

authored a memorandum, which included its findings of fact and conclusions

of law that the Agency established grounds to terminate Father's parental

rights under section 2511(a)(5) and (b). **See** Orphans' Court Findings and

Memorandum, 11/1/24, at 9-13. Father appealed and filed a

contemporaneous concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) ("concise statement").[7] The

Orphans' Court issued a Rule 1925(a) opinion wherein it referred to the

---

Father's cross-examination and closing argument asserted the Agency failed
to meet its burden of proof because it was unclear whether Child's condition
was permanent, whether Father would be unable to learn to care for Child's
condition safely, and whether the Agency provided all of the training methods
recommended by Dr. Menta. **See id**. at 34-36. Father did not question
whether Child had been removed from his care.

[7] The underlying termination decree was recorded on the docket on November
1, 2024. We note that Father filed his notice of appeal on December 3, 2024,
outside of the thirty-day period contemplated by Pa.R.A.P. 903(a). However,
the clerk of the orphans' court failed to indicate in the docket whether notice
had been provided. **See** Pa.O.C.R. 4.6(b) ("The clerk shall note in the docket
the date when notice was given to the party or to his or her counsel under
subparagraph (a) of this Rule."). Therefore, although facially untimely, we
will not quash Father's appeal. **See Carr v. Michuck**, 234 A.3d 797, 806 (Pa.
Super. 2020) (finding a breakdown of court operations and that the thirty-day
appeal period had not started to run when a clerk failed to make the required
notation in the docket); **accord In re Adoption of K.A.F.**, 273 A.3d 1036
(Pa. Super. 2022) (unpublished memorandum decision, at *4); Pa.R.A.P. 126
(permitting citation to unpublished non-precedential memorandum decision of
the Superior Court filed after May 1, 2019).

reasoning set forth in its findings and memorandum accompanying the subject decree.

As noted above, Counsel previously filed a petition to withdraw and an accompanying no-merit brief, and this Court denied the petition to withdraw. The panel noted the Agency had cited only section 2511(a)(5) as the basis for terminating Father's parental rights and there was a colorable claim that the Agency had not removed Child **from Father's care** as required by that section. The prior decision noted potentially conflicting interpretations and applications of the phrase "removed from the care of the parent." **See A.A.S. I**, 2025 WL 1756729 (memorandum decision at **5-6) (discussing, *inter alia*, **In re Adoption of J.J.**, 515 A.2d 883 (Pa. 1986), and **In re C.S.**, 761 A.2d 1197 (Pa. Super. 2000) (*en banc*)). The prior decision also left open the question of whether Father waived a challenge to the sufficiency of the evidence based on section 2511(a)(5)'s "removed from the care of the parent" language. **See id**. (memorandum decision at *6 n.9). Counsel subsequently filed an advocate's brief, and the Agency has filed a responsive brief.

Father's advocate's brief raises the following issue for our review:

> Whether the trial court erred in terminating [Father's] parental rights under 23 Pa.C.S.[A.] § 2511(a)(5) where [C]hild was never in [Father's] care and therefore had not been "removed from the care of the parent" as required by the statute?

Father's Brief at 5.

The following principles govern our review:

> [T]ermination of parental rights is the most extreme infringement of parental rights. Additionally, it is beyond cavil that the protection of children, and in particular the need to provide permanency for dependent children, is a compelling state interest. In balancing these interests, the General Assembly has created a detailed system setting forth the limited situations which would result in removal of children from their parents and termination of parental rights. Moreover, the statutory construct requires specific determinations by the trial court regarding the proper placement and permanency goals of the children at each step of the process. Ultimately, the grounds of termination must be demonstrated by the state by clear and convincing evidence.

*In re D.C.D.*, 105 A.3d 662, 676 (Pa. 2014) (internal citations omitted).

> When reviewing a decree terminating parental rights,
>
> [o]ur standard of review . . . requires that we accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotation marks omitted). When an issue on appeal involves a pure question of law, however, an appellate court's standard of review is *de novo*, and the scope of review is plenary. *See Interest of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023).

In this case, the Agency's petition to terminate Father's parental rights cited only section 2511(a)(5). This Court has stated that to satisfy the requirements of section 2511(a)(5), the petitioning party must produce clear and convincing evidence to establish each of the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions that lead to the child's removal or placement continue to exist; (3)

the parent cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent(s) are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. **See In re B.C.**, 36 A.3d 601, 607 (Pa. Super. 2012). Father's present challenge to the sufficiency of the evidence focuses on the first element of section 2511(a)(5).

Before addressing Father's challenge, however, we initially consider the Agency's claim that Father waived this issue by not raising it in the Orphans' Court. **See** Agency's Brief at 10-12. The Agency observes that, during the litigation of its petition to terminate Father's parental rights, Father did not contest the first element of section 2511(a)(5) by raising a timely objection or arguing that Child was not removed from his care. Discussing Pa.R.A.P. 302(a) and **Dilliplaine v. Lehigh Valley Trust, Co.**, 322 A.2d 114 (Pa. 1974), the Agency asserts Father did not provide the Orphans' Court with an opportunity to address or correct the alleged error. Strict enforcement of an issue preservation requirement, the Agency continues, is appropriate to avoid delaying permanency for Child, particularly when Child is in a pre-adoptive foster home.

We disagree with the Agency's waiver argument. The Agency, as the petitioning party, bore the burden of proof to prove every element of the

ground for termination cited by clear and convincing evidence. *See D.C.D.*, 105 A.3d at 676. Father's failure to object to the sufficiency of the Agency's *prima facie* case at the hearing does not automatically result in waiver of his sufficiency of the evidence argument. On this point, we find persuasive the reasoning in our memorandum decision in *In re Adoption of M.E.L.*, 479 MDA 2022, 2022 WL 4113115 (Pa. Super. 2022) (unpublished memorandum decision at *5), *aff'd*, 298 A.3d 118 (Pa. 2023), wherein we concluded that a party who did not appear at a hearing to terminate his parental rights may challenge the petitioning party's failure to establish a *prima facie* case for the first time on appeal.

Because Father may challenge the sufficiency of the evidence supporting the decree terminating his parental rights for the first time on appeal, his failure to argue against the first element of section 2511(a)(5) at the hearing did not waive this issue. Therefore, we review the merits of Father's challenge.[8]

_____

[8] Although not raised by the Agency, we note that Father's concise statement, which generally asserted the Orphans' Court "abused its discretion and made an error of law in terminating [his parental rights] under [section 2511(a)(5) and (b)]," could be construed as too vague to support a challenge to the first element of section 2511(a)(5), particularly when his arguments at the hearing did not challenge that element. Concise Statement, 12/2/24, at 1; *see also In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (noting that "[t]his Court may find waiver where a concise statement is too vague") (internal citation omitted). However, this Court has not yet adopted the approach in criminal cases—that the appellant must identify which element he intends to contest on appeal—in termination of parental rights cases. *Compare*
*(Footnote Continued Next Page)*

The issue of the interpretation and application of a statute presents a question of law and, as noted above, the standard of review is *de novo*, and the scope of review is plenary. **See K.T.**, 296 A.3d at 1104. In interpreting a statute, an appellate court must first consider the statute's plain language. **See id**. "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning . . .." 1 Pa.C.S.A. § 1903(a).

The first element of section 2511(a)(5) requires the petitioning party to present clear and convincing evidence that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months." The statute does not define the pertinent terms in the phrase "removed from the care of the parent." **See** 23 Pa.C.S.A. § 2102.[9] The references to a removal by the court or a voluntary

---

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (noting that an appellant in a criminal appeal must "specify the element or elements upon which the evidence was insufficient" in his concise statement in order to preserve the issue for appeal). Here, a challenge to the first element of section 2511(a)(5) is fairly included in Father's error complained of on appeal. **See** Pa.R.A.P. 1925(b)(4)(v); *Commonwealth v. Price*, 284 A.3d 165, 170-71 (Pa. 2022).

[9] The definitions in 23 Pa.C.S.A. § 2102 include the terms agency, court, and parent, but those definitions are not relevant to the issue presented in this appeal.

agreement, however, suggest that the General Assembly intended a peculiar meaning rooted in the "detailed system setting forth the limited situations which would result in removal of children from their parents and termination of parental rights." *See D.C.D.*, 105 A.3d at 676.

As noted in this panel's prior decision, the controlling and persuasive case law further suggests a potential split in the interpretation and application of the phrase. In *J.J.*, an agency took custody of a child after his mother was involuntarily committed to a state hospital shortly following the child's birth. *See J.J.*, 515 A.2d at 886-87. In that case, the courts did not expressly discuss the facts surrounding father's availability to care for the child, but it was undisputed that the father "never assumed any parental responsibility" and questioned his paternity of the child. *Id*. at 887. The father had only visited with the child in the mother's presence, and at her insistence, and he only requested visits for himself *after* the agency filed a petition to terminate his parental rights. *See id*. Additionally, the father was uncooperative and hostile with the child's social worker, showed no motivation to accept services, and repeatedly told the social worker he could not care for the child. *See id*. The agency subsequently petitioned for the termination of the father's parental rights, and the orphans' court terminated his parental rights under sections 2511(a)(2) and (5). *See id*. at 886. This Court reversed the orphans' court, but our Supreme Court reversed this Court. *See id*. at 885, 889-90.

In discussing section 2511(a)(5), our Supreme Court, in *J.J.*, stated section 2511(a)(5) authorized the termination of parental rights when "a child *has been placed under the care of a[n agency]* for a term in excess of six months" and the other elements of the section were met. *Id*. at 889 (emphasis added). The *J.J.* Court emphasized, "the record clearly shows that the child was in the custody of [the agency] virtually from birth, approximately seventeen . . . months at the time of the hearing. [The father] has never had custody of, nor provided support for, his child." *Id*. at 890. The bulk of the discussion in *J.J.*, however, focused on the evidence that the father's new-found interest in the child was "too little effort, too late." *Id*. at 889-91.

In *C.S.*, the father was incarcerated when the mother gave birth to the child and when the agency removed the child from the care of the mother. *See C.S.*, 761 A.2d at 1198. Prior to the removal of the child, the father had been out of prison for only one month, and no evidence suggested he ever lived with the child before returning to jail. *See id*. at 1199, 1201. The agency filed a petition to terminate the father's parental rights, and the trial court determined termination was appropriate under, *inter alia*, section 2511(a)(5). *See id*. at 1200. On appeal, the father specifically argued that the child was not removed from his care, because the child was never in his care. The *C.S.* Court agreed and concluded, "[The father] was incarcerated at the time [the child] was removed by [the agency]. . . . Termination under subsection 2511(a)(5) was not appropriate . . . because the record reflects

- 13 -

that [the child] was never in [Father's] care and, therefore, could not have been removed from his care." *Id*. The *C.S.* Court, however, ultimately affirmed the termination of the father's parental rights on section 2511(a)(1). *See id*. at 1203.

The conclusion in *C.S.* is binding to the extent a child cannot have been removed from the care of an incarcerated parent. *See In re Z.P.*, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010). In such circumstances, this Court has had no difficulty in reversing a decree terminating parental rights based on section 2511(a)(5). *See Interest of H.W.*, 1217 & 1218 EDA 2021, 2021 WL 6142107 (Pa. Super. 2021) (memorandum decision at *5).

Nevertheless, uncertainty remains concerning whether a child is "removed" from a non-custodial parent when the custodial parent had been caring for the child. No published appellate decision has extended *C.S.* to non-incarcerated parents. Some of our memorandum decisions have suggested an expansion of *C.S.* based on literal interpretations of the phrase "removed from the care of the parent" or *C.S.*'s language that a child had "never" been in the care of the parent.[10] Other cases have taken a less literal

_____

[10] *See In re Adoption of M.B.*, 884 & 885 MDA 2024, 2025 WL 472677 (Pa. Super. 2025) (memorandum decision at *6) (noting, "Because the [c]hildren were not in [the m]other's care or custody at the time of removal, they could not be removed from Mother's care"); *In Interest of P.N.M.*, 835-838 EDA 2021, 2021 WL 4261127, (Pa. Super. 2021) (memorandum decision at *3) (noting that while the mother did not argue section 2511(a)(5), termination
*(Footnote Continued Next Page)*

- 14 -

approach and affirmed the termination of parental rights under section 2511(a)(5), even if the parent had not "cared" for a child.[11]

Mindful of this background, we summarize Father's and the Agency's arguments concerning the interpretation and application of the first element of section 2511(a)(5). Father contends that while Child "has been in the custody of his foster family" since September 2023, Child "had never been in [his] care." Father's Brief at 7. He contends that his difficulties caring for the child are irrelevant to the initial inquiry of whether Child had been "removed" from his care based on a strict interpretation and application of section 2511(a)(5). *See id*. at 8-9. Father also attempts to distinguish the facts of *J.J.* by contrasting the father's lack of interest in that case from Father's desire to learn how to take proper care of Child, his demonstrations of love and affection for Child, and his amenability to redirection in the present case. *See id*. at 10.

_____

under section 2511(a)(5) "was improper" because the children "were removed from the care of [the f]ather, not [the m]other").

[11] *See Interest of E.D.A.*, 683-687 MDA 2022, 2023 WL 8650259 (Pa. Super. 2023) (memorandum decision at *4 n.6) (applying section 2511(a)(5) and concluding the child "was clearly removed from [father's] care at the time of [the child's] birth" where the father was not incarcerated at the time of the child's birth, the father was available to take custody of the child, and the father "would have, in fact, been in custody of [the child] *but for* [the child's] removal by [the agency] at the hospital"), *appeal dismissed as improvidently granted*, 333 A.3d 370 (Pa. 2025); *but see id*. (memorandum decision at *15) (McCaffery, J., dissenting) (asserting that section 2511(a)(5) should not apply when a child was always outside the care and custody of his parents).

The Agency counters that the first element of section 2511(a)(5) should be interpreted broadly in line with *J.J.* **See** Agency's Brief at 13. The Agency notes that section 2511(a)(5) was enacted as part of the Adoption Act of 1980 to provide an additional ground for terminating parental rights when a child is in foster care. **See id**. at 13-14 (*citing* 23 Pa.C.S.A. § 2511, Comment-1980). The Agency contends that the term "removed" should not be strictly interpreted as "taken from [a] person," and suggests the term connotes "a wide range of definitions." **Id**. at 14. The Agency suggests that once Father's paternity was established, and he did not seek custody of Child, there was a "*de facto* removal" of Child from his care. **Id**. (italics added). The Agency adds that once Father "was not found to be a ready[,] willing[,] and able parent," Child was effectively removed from his care. **Id**. at 14-15.

Following our review of the statute, the case law, and the parties' arguments, we conclude the Agency failed to present clear and convincing evidence on the first element of section 2511(a)(5). Our Supreme Court, in *J.J.*, stated that section 2511(a)(5) could apply when "a child has been placed under the care of a[n agency] for a term in excess of six months." *J.J.*, 515 A.2d at 889. However, there is no indication that the father in *J.J.* challenged the interpretation of the first element of section 2511(a)(5) or contested

whether the child had been removed from his care.[12]  Therefore, our Supreme Court's broad statement—that a child may be deemed "removed" when the child is in the care of the Agency—is not a binding interpretation of section 2511(a)(5).  *Cf. In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013) (noting that the doctrine of *stare decisis* "only applies to issues actually raised, argued and adjudicated, and only where the decision was necessary to the determination of the case").  Accordingly, we reject the Agency's argument that section 2511(a)(5) should be interpreted broadly and applied in this case in accord with *J.J.*

Father and the Agency do not expressly argue whether *C.S.* should extend to a parent who is not incarcerated.  However, we discern no logical basis to limit *C.S.* to cases where the parent is incarcerated.  Here, similar to *C.S.*, the Agency removed Child from Mother's care, not Father's care.  *See* Petitioner's Exhibit 1, Order of Protective Custody, 11/1/24, at 1 (concluding, *inter alia*, that allowing Child to "remain in the custody of [Mother] would be contrary [Child's] welfare and best interest"); *id*., Shelter Care Order,

---

[12] Indeed, this Court's prior decision in that appeal suggests that the father in *J.J.* challenged the sufficiency of the evidence based on his claims that the conditions leading to the child's removal or placement no longer existed.  *See In re Adoption of James J.*, 481 A.2d 892, 893 & n.1, 897 (Pa. Super. 1984) (noting the four issues raised on appeal and summarizing the father's sufficiency argument that the agency proved he "failed to remedy conditions which initially occasioned the removal from parental care" for the purpose of section 2511(a)(5)).

9/18/23, at 1 (same). The Agency presented no evidence that Father had been identified, or was aware of his possible paternity, when Child was removed from Mother's care, or even when the court adjudicated Child dependent. **See id**., Order of Adjudication and Disposition, 10/20/23, at 1-2 (noting that "the father of [Child] is unknown as paternity has not been established" and removing Child from Mother's "home"). Although Father was not incarcerated, there is no indication he would have been available to take custody of Child when Mother began neglecting Child, or that he "would have . . . been in custody of [Child] **but for** [Child's] removal" from Mother. **Cf. E.D.A.**, 2023 WL 8650259 (unpublished memorandum decision at *4 n.6). Therefore, like the father in **C.S.**, who was unable to assume any custody over the child due to a circumstance beyond his immediate control, Father here had no opportunity to exercise custody or care for Child when Child was removed from Mother's care. Thus, as in **C.S.**, we are constrained to conclude that Child was not removed from Father's care as required by the first element of section 2511(a)(5), even if Father was not incarcerated at the time of Child's removal. In short, section 2511(a)(5) cannot provide a ground to terminate Father's parental rights under the circumstances of this case.[13]

_____

[13] We acknowledge that after Father's paternity was established, he was made part of the permanency planning for Child. The court also entered permanency review orders in January, May, and September 2024, which confirmed placement away from Father and Mother was appropriate and mentioning concerns "about both parents' ability to parent the child." **E.g.**
*(Footnote Continued Next Page)*

In light of the foregoing, we conclude the Agency failed to establish a *prima facie* case supporting its petition seeking the termination of Father's parental rights based on section 2511(a)(5), and we do not reach the issue of whether the termination of Father's parental rights best served the needs and welfare of Child under section 2511(b). ***See Interest of R.R.D.***, 300 A.3d 1077, 1082 n.4 (Pa. Super. 2023). We are mindful that there was clear and convincing evidence, at least at the time of the hearing, that Father was incapable of caring for Child due to Child's medical condition. Moreover, because that incapacity could result in Child silently aspirating on improperly prepared liquids, there was a possibility that the incapacity could result in Child's death. To the extent such circumstances continue to exist, it would be within the province of the Agency to file a petition to terminate Father's parental rights citing an applicable ground under section 2511(a), as well as (b).

Decree reversed.

Judge Olson concurs in the result.

President Judge Emeritus Ford Elliott files a dissenting memorandum.

---

Permanency Review Order, 5/3/24, at 1-3. Although permanency review requires a court to determine the continuing necessity for and appropriateness of a child's placement, such orders do not speak to the removal of a child from the care of parent. Thus, the permanency review orders do not constitute a removal of Child from Father's care by the court. Moreover, the Agency has not presented evidence of a voluntary agreement between the Agency and Father. Accordingly, we discern no merit to the Agency's argument that Child had been *de facto* removed from Father's care.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>11/19/2025</u>